PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL GURISH, | ) | CASE NO. 1:10CV02292 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| OHIO DEPARTMENT OF MENTAL | ) | |
| RETARDATION AND | ) | |
| DEVELOPMENTAL DISABILITIES, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** (Resolving ECF Nos. 39, 46, 71, |
| Defendants. | ) | 73, 78, & 84) |

I. Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     A.    The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     B.    Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     C.    Plaintiff's Causes of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II. Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     A.    Judgment on the Pleadings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          1.    Defendant Gregory Patterson is Absolutely Immune from Civil
              Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          2.    Plaintiff's § 1981, § 1982, and ADA Claims against ODDD, ODAS, and
              OCSEA in their Official Capacities are Barred by the Eleventh
              Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

               a.    Counts One, Three, & Five:  §§ 1981 and 1983 Claims Against

(1:10CV02292)

ODDD, ODAS, and OCSEA . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    b.    Count Two:  ADA Claim Against ODDD and OCSEA. . . . . . . 14

3.    ODDD Defendants and ODAS Defendants in their Individual Capacities are Entitled to Qualified Immunity from Plaintiff's Due Process allegation in Count One and Wrongful Termination allegation in Count Three. . . . 15

    a.    Count One: Deprivation of Procedural Due Process against ODDD Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    b.    Count Three: Wrongful Termination Claim against ODDD. . . . . 20

4.    Plaintiff's Individual Capacity Claims Alleged in Counts Two, Three, Four, and Five are Dismissed for Failure to State a Claim  . . . . . . . . . . 21

    a.    Plaintiff's ADA Claim in Count Two and Wrongful Termination Claim pursuant to §§ 1981, 1983, and 2000d in Count Three. . . . 22

        1.    ADA & Wrongful Termination pursuant to § 1983. . . . . . 23

        2.    Wrongful Termination Claim pursuant to §§ 1981 and 2000d and Title VII Retaliation Claim pursuant to § 1981. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    b.    Fair Representation Labor Management Relations Act. . . . . . . . 25

        1.    Collective Bargaining Agreement . . . . . . . . . . . . . . . . . . 25

        2.    Duty of Fair Representation . . . . . . . . . . . . . . . . . . . . . . 26

    c.    Title VII Retaliation Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

        1.    Title VII Individual Capacity. . . . . . . . . . . . . . . . . . . . . . 27

        2.    Title VII Official Capacity. . . . . . . . . . . . . . . . . . . . . . . . 28

5.    Exhaustion of Administrative Remedies:  EEOC Charge and Right to Sue Letter Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

    a.    Plaintiff Adequately Satisfied his EEOC Charge Requirement. . . 29

2

(1:10CV02292)

     b.  Plaintiff's Right to Sue Letter Requirement is Waived. . . . . . . . 30

  B.  Subject Matter Jurisdiction over Plaintiff's Fair Representation Labor Management Relations Act Section 301(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

III. Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

APPENDIX A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

(1:10CV02292)

## I.  Background

*Pro se* Plaintiff Daniel Gurish ("Gurish" or "Plaintiff"), a former employee of Ohio

Department of Developmental Disabilities,[1] filed the present employment discrimination and

retaliation action against the following:  (1) Ohio Department of Developmental Disabilities

("ODDD")[2] and its employees John Martin, Ginnie Whisman, Laura Frazier, Randy Russell,

Wendy DiGregorio, Karen Reich, Donna Adams, and David Montgomery (collectively "ODDD

Defendants"); (2) Ohio Department of Administrative Services ("ODAS") and its employees

Hugh Quill, Bonnie Cross, and Susan Bythwood Russell (collectively "ODAS Defendants"); (3)

Ohio Civil Service Employees Association (collectively "OCSEA") and its employee Robert

Robinson ("OCSEA Defendants"); and, (4) Ohio Assistant Attorney General Gregory Patterson.

ECF No. 28 at 4-7 (Second Amended Complaint).

Before the Court are ODDD Defendants, ODAS Defendants, and Defendant Gregory

Patterson's Motion for Judgment on the Pleadings, pursuant to Fed. R. Civ. P. 12(c) (ECF No.

39); OCSEA Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)

(ECF No. 46); Plaintiff's Amended Motion for Summary Judgment (ECF No. 71); Plaintiff's

motions to amend his Complaint and add the Ohio Office of Attorney General as a Defendant

(ECF Nos. 73; 84); and ODDD Defendants and ODAS Defendants' Motion to Strike Plaintiff's

---

[1]  The Ohio Department of Developmental Disabilities was formerly known as the Ohio
Department of Mental Retardation and Developmental Disabilities.  ECF Nos. 28 at 4; 39 at 1
n.1.

[2]  In his Second Amended Complaint, Plaintiff refers to ODDD as "Defendant
Warrensville."  ECF No. 28 at 4.

4

(1:10CV02292)

Exhibits and Motion for Leave to File Sur-Reply (ECF No. 78).

The Court grants ODDD Defendants, ODAS Defendants, and OCSEA Defendants'

motions, in part.  Plaintiff's Amended Motion for Summary Judgment and motions to amend his

Complaint are denied as moot.  ODDD Defendants and ODAS Defendants' Motion to Strike

Plaintiff's Exhibits and Motion for Leave to File Sur-Reply is denied as moot.

### A.    The Parties

ODDD is an agency of the State of Ohio.  ECF Nos. 28 at 4; 29 at 2-3.  John Martin is the

Director of ODDD.  ECF Nos. 28 at 5; 29 at 3.  Ginnie Whisman is the Deputy Director of

Development Centers at ODDD.  ECF Nos. 28 at 5; 29 at 3.  Laura Frazier is the Labor Relations

Administrator at ODDD.  ECF Nos. 28 at 5; 29 at 3.  Randy Russell is the former Director of

Operations at ODDD.  ECF Nos. 28 at 6; 29 at 3.  Wendy DiGregorio is the Superintendent at

ODDD, Warrensville Developmental Center.  ECF Nos. 28 at 6; 29 at 3.  Karen Reich was

employed within Human Resources at ODDD.  ECF Nos. 28 at 6; 29 at 3.  Donna Adams is a

Human Capitalist Management Analyst at ODDD.  ECF Nos. 28 at 7; 29 at 4.  David

Montgomery is the Labor Relations/EEO Officer at ODDD, Warrensville Developmental Center.

ECF Nos. 28 at 7; 29 at 4.

ODAS is an agency of the State of Ohio.  ECF No. 28 at 5.  Hugh Quill is the former

Director of ODAS.  ECF Nos. 28 at 5; 35 at 1, 3.  In its Answer, ODAS explains that Defendant

Robert Blair is the current Director of ODAS, Defendant Quill's successor, and thus

automatically substitutes Defendant Quill in his official capacity, pursuant to Fed. R. Civ. P.

5

(1:10CV02292)

25(d).[3]  Bonnie Cross is the Benefits Coordinator at ODAS.  ECF Nos. 28 at 6; 35 at 3.  Susan

Bythwood Russell is employed at ODAS.  ECF Nos. 28 at 6-7; 35 at 4.

OCSEA is an "employee organization," pursuant to Ohio Revised Code § 4117.01(D),

which "means any labor or bona fide organization in which public employees participate and that

exists for the purpose, in whole or in part, of dealing with public employers concerning

grievances, labor disputes, wages, hours, terms, and other conditions of employment." ECF Nos.

28 at 4; 30 at 2 (quoting R.C. § 4117.01(D)).  Robert Robinson is a Staff Representative at

OCSEA.  ECF Nos. 28 at 7; 30 at 3.

Gregory Patterson is an Assistant Attorney General at the Ohio Attorney General's

Office.  ECF Nos. 28 at 7; 29 at 4.

**B.    Factual Background**

Plaintiff began his employment with ODDD in July 2003 as a "Maintenance Repair

Worker II," which is a position subject to a collective bargaining agreement entered into between

the State of Ohio and OCSEA.  ECF Nos. 28 at 8; 29 at 2; 30 at 2.  In November 2008, the

ODDD employees elected Plaintiff as President of the Union.  ECF No. 28 at 8-9.  As Union

President, Plaintiff filed a safety complaint with ODDD high-level management and the

Occupational Safety and Health Administration ("OSHA") alleging that the employees were

improperly operating the Bobcat equipment due to a lack of training.  ECF No. 28 at 9.

---

[3]  Federal Rule of Civil Procedure 25(d) is "merely a procedural device for substituting a
successor for a past officeholder as a party."  Fed. R. Civ. P. 25(d)(1) (1961 amend.).  The Rule
provides that when a public official is sued in his official capacity and departs during the lawsuits
pendency, the public official's successor automatically assumes the role in the litigation.  *See*
*Hafer v. Melo*, 502 U.S. 21, 25 (1991).

(1:10CV02292)

Plaintiff claims that, on February 19, 2009, he sustained an injury while operating a Bobcat to remove snow from the sidewalk.  As a result of these injuries, he did not return to work for five weeks and filed a workers' compensation claim.  ECF No. 28 at 10.  Plaintiff further alleges that various Defendants approved of unsafe working conditions, engaged in unethical behavior, and created a hostile environment.  ECF No. 28 at 11-12.  As a result, Plaintiff resigned as President of the Union.  ECF No. 28 at 12.

On October 2, 2009, ODDD issued Plaintiff a non-disciplinary incident Fact Finding Report.  ECF No. 28 at 13.  The Report indicated that Plaintiff  failed to inspect the fire extinguishers in September 2009.  ECF No. 28 at 13.  Plaintiff contends that Defendant Russell "removed the tags prior to Plaintiff['s] [] inspection and then returned the tags afterwards."  ECF No. 28 at 13.  Plaintiff alleges that Defendant Russell's actions caused him "great emotional distress, emotional pain and suffering, mental anguish and suicidal thoughts," resulting in Plaintiff taking a two month medical leave.  ECF No. 28 at 13.  Plaintiff explains that prior to his return, ODDD required him to take a psychological evaluation.  ECF No. 28 at 13.

Upon Plaintiff's return and in light of his worker's compensation claim, Plaintiff requested "light duty" accommodations, pursuant to his doctor's advisement.  ECF No. 28 at 14.  ODDD placed Plaintiff on light-duty work for thirty (30) days.  ECF No. 28 at 14.  Plaintiff complains that ODDD did not accommodate him with a new position, such as an Account Clerk II position.  ECF No. 28 at 14.  After thirty (30) days, ODDD denied Plaintiff any further "light duty" accommodations because his condition had not improved.  ECF No. 28 at 14.

7

(1:10CV02292)

Plaintiff states that in January 2010, ODDD issued him a removal letter "effectively terminat[ing]" his employment. ECF No. 28 at 15. In this correspondence, Defendant Donna Adams, Human Capital Management Analyst, explained that the accommodations program requires employees to "show improvement at least every 30 days (maximum of 90 days) to remain in the program." ECF No. 28-1 at 21. Defendant Adams explained that Plaintiff's medical documentation showed no improvement in his restrictions. ECF No. 28-1 at 21.

On March 17 2010, ODDD conducted an involuntary separation hearing despite Plaintiff's objection to being unaccompanied by a union representative, among other things. ECF No. 28 at 6, 17. The next day, Defendant Wendy DiGregorio, ODDD Superintendent, signed an order removing Plaintiff from State employment that was effective ten (10) days later. ECF Nos. 28 at 6, 17; 28-1 at 83. The removal order stated that Plaintiff had been off work since October 2, 2009, and that the action was not disciplinary in nature. ECF No. 28-1 at 83.

In July 2010, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on retaliation and disability.[4] ECF No. 28-1 at 67.

### C.      Plaintiff's Causes of Action

Based upon these events, Plaintiff asserted the following causes of action in federal court: (1) deprivation of procedural due process under 42 U.S.C § 1983 against ODDD, Randy Russell, ODAS, Susan Bythwood-Russell, and Bonnie Cross in their individual and official capacities; (2)

---

[4] The record does not reflect nor does Plaintiff include the status of his EEOC discrimination charge.

8

(1:10CV02292)

violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 against ODDD and

OCSEA in their individual and official capacities; (3) a wrongful termination claim under 42

U.S.C. §§ 1981, 1983, and 2000d as a Fourteenth Amendment due process violation against

ODDD and OCSEA in their individual and official capacities; (4) violation of the Fair

Representation Labor Management Relations Act Section 301(a) against ODDD and OCSEA in

their individual and official capacities; and (5) a retaliation claim under Title VII of the Civil

Rights Act of 1964 and 42 U.S.C. § 1981 against Randy Russell and Gregory Patterson in their

individual and official capacities. ECF No. 28 at 18-29.

   As a preliminary matter, the Court addresses ODDD Defendants' argument, alleged in

their Motion for Judgment on the Pleadings, that Plaintiff's claims against individually named

Defendants in their official capacities should be dismissed as duplicative. ECF No. 39 at 13.

The U.S. Supreme Court has plainly stated that official-capacity suits "represent only another

way of pleading an action against an entity of which an officer is an agent." *Baar v. Jefferson*

*Cnty Bd. of Educ.*, Case Nos. 10-5704, 10-5741, 2012 WL 738741, *12 (6th Cir. Mar. 7, 2012)

(affirming the district court's dismissal of the official capacity claims against the individual

defendants as a duplicative claim against the county board of education (citing *Kentucky v.*

*Graham*, 473 U.S. 159, 165-66 (1985)).  Likewise a cause of action "against a state official in his

or her official capacity is not a suit against the official but rather is a suit against the official's

office, *i.e.*, against the State." *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)

(internal citations and quotations omitted).  A judgment against the individual Defendants in

their official capacities, therefore, equates to a judgment against ODDD, ODAS, and OCSEA,

(1:10CV02292)

and the State of Ohio.  *Baar*, 2012 WL 738741, at *12-13.

The Court dismisses Plaintiff's claims against the individually named Defendants in their

official capacities.

## II.  Discussion

### A.    Judgment on the Pleadings

The standard of review for a Rule 12(c) motion is the same as for a motion under Rule

12(b)(6) for failure to state a claim upon which relief can be granted.  *Fritz v. Charter Twp. Of*

*Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d

509, 511-12 (6th Cir. 2001)).  "For purposes of a motion for judgment on the pleadings, all

well-pleaded material allegations of the pleadings of the opposing party must be taken as true,

and the motion may be granted only if the moving party is nevertheless clearly entitled to

judgment."  *Id*. (citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir.

2007)).

The factual allegations in the complaint need to be sufficient to give notice to the

defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to

render the legal claim plausible, *i.e.*, more than merely possible.  *Ashcroft v. Iqbal*, --- U.S. ----,

129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009).  However, "a legal conclusion couched as a

factual allegation" need not be accepted as true on a motion to dismiss, nor are recitations of the

elements of a cause of action sufficient.  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th

Cir. 2009) (internal citations omitted).

10

(1:10CV02292)

A motion to dismiss for failure to state a claim that is styled as motion arising before pleadings are closed, but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c).  *See* Fed. R. Civ. P. 12(h)(2); *Lindsay v. Yates*, 498 F.3d 434, 436 n.4 (6th Cir. 2007).  OCSEA's Motion to Dismiss pursuant to Rule 12(b)(6) will be treated as a Rule 12(c) motion.  *See* ECF No. 46.

## 1. Defendant Gregory Patterson is Absolutely Immune from Civil Liability

Defendant Gregory Patterson, the Assistant Attorney General for the State of Ohio, has claimed absolute immunity.  ECF No. 39 at 9.  The privilege of absolute immunity is limited by the nature of the act performed by the official and not by virtue of the office itself.  *See Mitchell v. Forsyth*, 472 U.S. 511, 521 (1985) ("Mitchell's claim, then, must rest not on the Attorney General's position within the Executive Branch, but on the nature of the functions he was performing in this case."); *see also Forrester v. White*, 484 U.S. 219, 224-29 (1988) (applying this "function" approach to State judges).  The Sixth Circuit has held that "[s]tate prosecutors are absolutely immune from civil liability when acting within the scope of their prosecutorial duties."  *Howell v. Sanders*, 668 F.3d 344, 349 (6th Cir. 2012); *see also Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).

Here, the facts and pleadings, as a whole, demonstrate that Gregory Patterson resolved controversies while acting within the scope of his prosecutorial duties. Additionally, Plaintiff acknowledged that Gregory Patterson was acting within the scope of his prosecutorial duties when Plaintiff stated, in his Second Amended Complaint, that "during all times applicable hereto, [Gregory Patterson] was employed by defendant Ohio Attorney General's Office as an

(1:10CV02292)

Assistant Attorney General in the capacity as a [l]awyer representing the State of Ohio." ECF No. 28 at 7.  Defendant Assistant Attorney General Gregory Patterson is absolutely immune from civil liability.

>    **2.      Plaintiff's § 1981, § 1982, and ADA Claims against ODDD, ODAS, and OCSEA in their Official Capacities are Barred by the Eleventh Amendment**

At the outset, ODDD Defendants and ODAS Defendants raise an Eleventh Amendment defense pertaining to Plaintiff's claims arising under 42 U.S.C. §§ 1981 and 1983.  ECF No. 39 at 4.  When evaluating Defendants' Eleventh Amendment defense, the Court *sua sponte* considers Eleventh Amendment immunity issues regarding OCSEA.  *See S&M Brands, Inc.*, 527 F.3d at 507 (citing *Nair v. Oakland County Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (stating appellate courts can raise the question of sovereign immunity *sua sponte* because it implicates important questions of federal court jurisdiction and federal-state comity)).

The Eleventh Amendment of the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  The U.S. Supreme Court has construed this Amendment to grant a State sovereign immunity against suit brought by private citizens of any State.  *See Nihiser v. Ohio E.P.A.*, 269 F.3d 626, 627 (6th Cir. 2001) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).  Essentially, the Supreme Court has held that a citizen may not sue his own State under the Constitution and laws of the United States.

(1:10CV02292)

      **a.**      **Counts One, Three, & Five:  §§ 1981 and 1983 Claims Against ODDD, ODAS, and OCSEA**

In general, States and State entities sued in their official capacities pursuant to 42 U.S.C. §§ 1981 and 1983 are immune from suit for monetary relief under the Eleventh Amendment.  *See Foulks v. Ohio Dep't of Rehab. and Corr,* 713 F.2d 1229 (6th Cir. 1983); *S&M Brands, Inc. v. Cooper,* 527 F.3d 500, 507 (6th Cir. 2008).  The corresponding notion is that State Treasuries should not be required to pay judgments resulting from violations of federal law.

In his Second Amended Complaint, Plaintiff seeks monetary relief in the form of back pay, front pay, fringe benefits, and punitive damages against ODDD, ODAS, and OCSEA in Count One (Deprivation of Procedural Due Process), Count Three (Wrongful Termination), and Count Five (Retaliation),[5] pursuant to 42 U.S.C. §§ 1981 and/or 1983.  ECF No. 28 at 28-29.  The Sixth Circuit along with District Courts within the Sixth Circuit have previously determined that § 1981 and  § 1983 claims for monetary relief against ODDD, ODAS, and OCSEA are barred under the Eleventh Amendment.[6]  *See S&M Brands, Inc,* 527 F.3d at 507; *Mack v.*

---

[5]  Count Five, Plaintiff's Retaliation cause of action, is also grounded in Title VII of the Civil Rights Act of 1964.  ECF No. 28.  The Sixth Circuit has held that Title VII claims are not barred by the Eleventh Amendment.  *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999) (internal citations omitted).  The Court will address Plaintiff's Title VII claim at a later point.

[6]  The Eleventh Amendment sovereign immunity does not apply in the following: (a) when the State or State entity has consented to suit "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction[,]" *Freeman v. Michigan Dept. of State,* 808 F.2d 1174, 1179 (6th Cir. 1987) (internal citations omitted); (b) when the lawsuit is filed against a State official for purely injunctive relief enjoining the official from violating federal law, *Ex parte Young,* 209 U.S. 123, 155-56, 28 S.Ct. 441, 52 L.Ed. 714 (1908); and, (c) when Congress has properly abrogated a State's immunity, *S&M Brands, Inc.,* 527 F.3d at 507 (citing *Kovacevich v. Kent State Univ.,* 224 F.3d 806, 817 (6th Cir. 2000)).  In the instant matter, the moving Defendants and OCSEA have

(1:10CV02292)

*Holcomb*, 446 F.Supp.2d 777, 780 (N.D. Ohio 2006) ("[Plaintiff's] § 1981 and § 1983 claims against the ODPS and the ODAS are barred under the Eleventh Amendment."); *Cottrill v. Ohio Civil Service Employees Ass'n*, 665 F.Supp. 525, 526-27 (N.D. Ohio 1987) (finding Plaintiff's back pay damages and reinstatement against Ohio Civil Service Employees Association and Local 11–AFSCME is barred by the Eleventh Amendment); *Leaman v. Ohio Dept. of Mental Retardation and Developmental Disabilities*, 620 F.Supp. 783 (S.D. Ohio 1985), *rev'd on other grounds, aff'd* 825 F.2d 946 ("As a State created, operated, and financed institution, [ODDD] is clearly an arm of the State entitled to Eleventh Amendment protection.").

Plaintiff's § 1981 and  § 1983 claims against ODDD, ODAS, and OCSEA in Counts One, Three, and Five are barred by the Eleventh Amendment of the U.S. Constitution.

### b.     Count Two:  ADA Claim Against ODDD and OCSEA

In Count Two, Plaintiff's disability discrimination claims arise under Title I of the Americans with Disabilities Act ("ADA"), which prohibits certain employers from discriminating on the basis of disability.[7]  ECF No. 28 at 21; *see* 42 U.S.C. §§ 12111-12117. Plaintiff seeks "back wages, seniority, fringe benefits and pension benefits, diminished earning capacity, . . . [and] attorney fees."  ECF No. 28 at 22.  The United States Supreme Court has held that, "States are immune to suits for money damages under Title I because Congress exceeded its

---

not expressly consented to suit in this case; the suit is seeking only monetary damages, not "purely injunctive relief[;]" and, there is no question that Congress has not abrogated immunity here.

[7]  As pleaded, Plaintiff alleges a cause of action under 42 U.S.C. § 12112(a)(2). However, the cited statutory provision does not exist.  Upon liberally construing Plaintiff's Second Amended Complaint, the Court looks to 42 U.S.C. § 12112(b)(2).

(1:10CV02292)

Fourteenth Amendment enforcement powers in enacting those provisions and therefore did not

properly abrogate the States' sovereign immunity from such suits." *Lowe v. Hamilton Cnty. Dept.*

*Of Job & Family Services*, 610 F.3d 321 325 (6th Cir. 2010) (citing *Bd. of Trs. of the Univ. of*

*Ala. v. Garrett*, 531 U.S. 356, 374 (2001)).  Plaintiff's ADA claim against ODDD and

OCSEA–State created, operated, and financed institutions–are barred by the Eleventh

Amendment of the U.S. Constitution.

> **3.     ODDD Defendants and ODAS Defendants in their Individual
> Capacities are Entitled to Qualified Immunity from Plaintiff's Due
> Process allegation in Count One and Wrongful Termination
> allegation in Count Three**

We now turn to the question of whether ODDD Defendants and ODAS Defendants in

their individual capacity are protected by qualified immunity from the allegations raised in

Counts One and Three.  ECF No. 39 at 12.  "The doctrine [of qualified immunity] protects all but

the plainly incompetent or those who knowingly violate the law." *Dorsey v. Barber*, 517 F.3d

389, 394 (6th Cir. 2008) (internal quotation marks and citations omitted).  When the defendant

raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the

defendant is not entitled to such immunity.  *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th

Cir. 2006).  If the plaintiff does not satisfy the burden in either the original complaint or in

response to the defendant's assertion of the qualified immunity defense, then dismissal is proper.

*Cameron v. Seitz*, 38 F.3d 264, 273 n.2 (6th Cir. 1994).

In interpreting the Supreme Court's test for qualified immunity, Sixth Circuit panels vary

in using either a two-part or three-part approach, both of which are accepted.  *Estate of Carter v.*

*City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005).  Under the two-part approach, the court

(1:10CV02292)

must determine whether: (1) the facts viewed in the light most favorable to the plaintiff show that a constitutional right has been violated; and (2) the violation involved a clearly established constitutional right of which a reasonable person would have known.[8] *Zulock v. Shures*, Case No. 08-4664, 2010 WL 6501311, *6 (6th Cir. Dec. 22, 2010) (internal citations omitted).

Plaintiff's Count One (Deprivation of Procedural Due Process) and Count Three (Wrongful Termination) are grounded in the Due Process Clause of the Fourteenth Amendment. The Due Process Clause provides that no State shall "deprive a person of life, liberty, or property, without due process of law." *See* U.S. Const. amend. XIV § 1. The Constitution does not create property interests, but rather such interests are created and defined by "existing rules or understandings that stem from independent sources such as state law . . . ." *Silberstein*, 440 F.3d at 311 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). A court must determine whether there is a protected property or liberty interest; and (2) if so, what procedures are required. *Matthews v. Eldridge*, 424 U.S. 319 (1976).

> **a.    Count One:  Deprivation of Procedural Due Process against ODDD Defendants**

Plaintiff's procedural Due Process violation pursuant to § 1983 stems from the following allegations:

---

[8] Courts may address the prongs of the qualified immunity analysis in whatever order is most useful. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). Under the tripartite approach, courts also consider whether "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *See Sample v. Bailey*, 409 F.3d 689, 695-96 (6th Cir. 2010). The Sixth Circuit explained that the third prong is only "occasionally examined by this court to 'increase the clarity' of the analysis." *Drogosch v. Metcalf*, 557 F.3d 372, 378 (6th Cir. 2009) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005)).

(1:10CV02292)

> The Defendant Warrensville alleges it has an injury procedure that includes sending a supervisor to an injury location to investigate.  This is done to determine whether the Employer will reject or accept a Claim pursuant to the Ohio Revised Code 4123.84.  The supervisor's investigation included: One week after the injury Supervisor Roman Karas video taped Defendant Russell driving the same bobcat along the same sidewalk cause the accident.  Defendant Russell also noted that the blade of the bobcat bucket was not dented.  Based on these findings, Defendant Warrensville contested the Claim to Defendant Department of Administration Service and Bonnie Cross and/or Susan Bythwood Russell.  Plaintiff states that the Defendant Russell abused his power and authority of his position and it is not in his job description to conduct criminal investigation for possible Workers Compensation Fraud.  The D.A.S. refused to make a referral to the B.W.C. investigators so a fair and honest investigation could take place.

ECF No. 28 at 10-11.  In Count One, Plaintiff claims that Defendant Bythwood-Russell "may have abused her position and violated state policy in ordering a referral [to the Special Investigations Department] not be made by her peer, Ms. Bonnie Cross" with respect to his 2009 injury.  ECF No. 28 at 19.  Stated differently, Defendants Russell, Bythwood-Russell, and Cross did not notify the Bureau of Workers' Compensation Investigative Unit to conduct an investigation for possible workers' compensation fraud, which Plaintiff claims is a violation of "state policy."  ECF No. 28 at 11.  Instead, Plaintiff explains that Defendant Cross notified the Attorney General.  ECF Nos. 28 at 11; 28-1 at 79.

The moving Defendants explain that in the ordinary course of a workers' compensation claim, the Bureau of Workers' Compensation ("BWC") receives a claim and makes an initial determination as to its jurisdiction over the claim as an "industrial claim."  ECF No. 39 at 5 (citing R.C. § 4121.51.1(A), O.A.C. § 4123-3-09(B)).  An employer has the right to contest or dispute a claim which routes the claim to the appropriate office for an investigation. ECF No. 39 at 5 (citing O.A.C. § 4123-3-09(B)(2)).  Separately, a claim may be referred to the Special

17

(1:10CV02292)

Investigations Department for an investigation.  ECF No. 39 at 5 (citing O.A.C. §
4123-3-09(C)(4)).  Special Investigations is a criminal justice agency that investigates reported
violations of law relating to workers' compensation.  ECF No. 39 at 5 (citing R.C. § 4121.131).
The BWC has discretion in assigning a claim for investigation and "may refer a claim for
investigation" "at any point in the processing of an application for benefits."  ECF No. 39 at 5
(citing O.A.C. § 4123-3-09).  A claim that is not investigated by Special Investigations merely
continues on in the ordinary course until it is decided whether a claim will be granted or denied.
ECF No. 39 at 5 (citing R.C. § 4123.51.1(B)(2), O.A.C. § 4123-3-09(B)(2)).  Thereafter, the
parties have the opportunity to appeal the decision to a district hearing officer, then to a staff
hearing officer, and finally to the Industrial Commission.  ECF No. 39 at 5 (citing R.C. §
4123.511(B)-(E)).  Beyond these rights of appeal, a party may appeal an adverse decision to the
court of common pleas.  ECF No. 39 at 5 (citing R.C. § 4121.512(C)(4)).

        In his response to the moving Defendants' motion, Plaintiff clarifies his cause of action
by explaining that Russell, Bythwood-Russell, and Cross violated:  (1) Warrensville
Developmental Center Policy Workers' Compensation and Occupational Injury Leave Number
HR-21; (2) an unidentified Department of Administration policy requiring that a referral be made
to the Bureau of Workers' Compensation for investigation; and, (3) Warrensville Developmental
Center Complaint Processing and Investigation Procedures Policy Number AD-10.  ECF Nos. 42
at 2; 42-1 at 10-15, 36-41.  Specifically, Plaintiff cites to Policy Number AD-10, Section G,
which states:

(1:10CV02292)

> When, in the judgment of the Superintendent and the Health and Safety
> Administrator, assistance with the investigative process is needed from an outside
> law enforcement agency, the Ohio State Highway Patrol will be contacted if the
> investigation is criminal in nature or OODMRDD if it is administrative.  For those
> administrative investigations that will involve officials of ODMRDD, the
> Superintendent will make the contact to the Assistance Deputy Director of State
> Operated Services and Supports, except if the Superintendent is the subject of the
> investigation.

ECF No. 42-1 at 39.

The moving Defendants argue that Plaintiff "fails to show that he has a property right secured by the Constitution, statute or case law in such an investigation" because Policy Number AD-10 does not make an investigation mandatory as it begins by stating:  "When in the *judgment of the Superintendent and the Health and Safety Administrator . . . ."  ECF Nos. 45 at 3; 42-1 at 39 (emphasis added).  As there is no right to an investigation by Special Investigations, there is no property interest for which due process must be provided when such an investigation is not conducted.  ECF No. 39 at 5.  Additionally, the moving Defendants highlight Plaintiff's admission that he appealed the denial of his workers' compensation claim regarding an alleged 2009 injury, which was ultimately denied.  ECF Nos. 28 at 10; 39 at 5.  In light of Plaintiff's workers' compensation claim appeal, the moving Defendants argue that Plaintiff was afforded all of his due process rights.  ECF No. 39 at 5.

Given the discretionary language of Policy Number AD-10 coupled with Plaintiff's denied workers' compensation claim, Plaintiff has not met his burden of demonstrating a property right entitled to greater due process than that already provided.

19

(1:10CV02292)

Because Plaintiff has failed to show a violation of a constitutional right, the moving

Defendants named in their individual capacities are entitled to qualified immunity on Count

One.[9]

> **b.      Count Three:  Wrongful Termination Claim against ODDD**[10]

Plaintiff argues that he was constitutionally entitled to due process before ODDD

allegedly wrongfully terminated him without "a chance to defend himself."  ECF No. 28 at 23.

Plaintiff's claim hinges on Defendants failure to notify him of a pre-termination hearing.

In *Cleveland Board of Education v. Loudermill*, the United States Supreme Court

concluded that due process was satisfied if the government provides a fired employee with an

informal pre-termination proceeding where it is possible to respond and then a later post-

termination hearing.  470 U.S. 532, 545-46 (1985).  In essence, the due process requirements are

"notice and an opportunity to respond."  *Id*.

In the instant matter, Plaintiff was afforded an informal pre-termination hearing *via* phone

conversation.  *See* ECF No. 28-1 at 21 ("Per our phone conversation on 01/05/2010:  Effective

01/04/2010, you are being removed from the Transitional Work Program due to no improvement

in your condition.").  Further, Defendants provided Plaintiff with a formal post-termination

hearing by way of appeal before the State Personnel Board of Review.  ECF No. 28-1 at 68-72.

_____

[9] Except Assistant Attorney General Gregory Patterson who has been granted absolute immunity.

[10]    The Court addresses Plaintiff's allegations in Count Three against OCSEA under Federal Rule of Civil Procedure 12(b)(6).

(1:10CV02292)

Plaintiff's attendance and participation at both the informal pre-termination hearing and formal post-termination appellate hearings show that he was sufficiently provided notice and an opportunity to respond.  Plaintiff's failure to plead facts or allegations that show a violation of his constitutional right prevents the cause of action from moving forward "since the plaintiff has failed to allege acts that are outside the scope of the defendant's immunity."  *See Kennedy v. City of Cleveland, 797 F.2d 297, 299 (6th Cir.1986)*.

Because Plaintiff has failed to show a violation of a constitutional right, ODDD Defendants named in their individual capacities are entitled to qualified immunity on Count Three.

### 4.    Plaintiff's Individual Capacity Claims Alleged in Counts Two, Three, Four, and Five are Dismissed for Failure to State a Claim

A motion under Rule 12(c) is generally treated in the same manner as a Rule 12(b)(6) motion to dismiss.  *Barany-Snyder v. Weiner, 539 F.3d 327, 332 (6th Cir. 2008)*.  Under Federal Rule of Civil Procedural 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)*).  "Although this is a liberal pleading standard, it requires more than the bare assertion of legal conclusions. Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  *First Am. Title Co. v. DeVaugh, 480 F.3d 438, 444 (6th Cir. 2007)* (quoting *Se. Tex. Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 671-72 (6th Cir. 2006)*).  In other words, claims set forth in a complaint must be plausible, not merely conceivable.  *Twombly, 550 U.S. at 570*.

21

(1:10CV02292)

To determine whether a claim should proceed, the Supreme Court has set forth a legal "plausibility standard" to assess whether the facts convincingly suggest actionable conduct, rather than merely describing conduct that actually occurred.  *Twombly*, 550 U.S. at 556 n.3; *see* RAKESH N. KILARU, *The New Rule 12(b)(6): Twombly, Iqbal, and the Paradox of Pleading*, 62 Stan. L. Rev. 905, 910-11 (2010).  Applying this standard, district court judges should weigh the facts and determine, when necessary, whether they are sufficient to "nudge [the] claims across the line from conceivable to plausible" based on their "judicial experience and common sense." *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S. Ct. at 1950.  A suit may proceed as long as plaintiff's complaint crosses that threshold.  *Twombly*, 550 U.S. at 570.

*Pro se* pleadings are viewed liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Notwithstanding this liberality, unrepresented plaintiffs are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

    a.    **Plaintiff's ADA Claim in Count Two and Wrongful Termination Claim pursuant to §§ 1981, 1983, and 2000d in Count Three**

In Count Two, Plaintiff alleges a violation of the Americans with Disabilities Act ("ADA") against ODDD and OSCEA.  ECF No. 28 at 21.  Further, in Count Three, Plaintiff alleges a wrongful termination cause of action against OCSEA under 42 U.S.C. §§ 1983, 1981, and 2000d.[11]  ECF No. 28 at 23.

_____

    [11]  In light of the Court's finding that the entity ODDD is entitled to qualified immunity under Count Three, the Court will, therefore, only address OCSEA.

(1:10CV02292)

### 1. ADA & Wrongful Termination pursuant to § 1983

When testing for comportment with Rule 12(b)(6), court will perform the two-step inquiry–first, isolate the legal conclusion to uncover the pleadings factual allegations; and second, examine the factual allegations for plausibility.  *Iqbal*, 129 S. Ct. at 1949-50.

After isolating Plaintiff's legal conclusions, Plaintiff's Count Two factual allegations include that ODDD and OCSEA conspired together to place Plaintiff in a transitional work program to terminate his employment, and the State's Rehabilitation Program was never offered to him.  ECF No. 28 at 22.  Additionally, the factual allegations in Count Three pertaining to OCSEA state the following:  OCSEA "conspired to wrongfully terminate his employment without just cause by placing Plaintiff in a transitional work program . . . [;]" Plaintiff was wrongfully terminated; Defendants held a pre-termination meeting without notifying Plaintiff and Plaintiff was unable to defend himself; and Plaintiff can perform his essential job duties.  ECF No. 28 at 23.

Even when afforded the most liberal reading, Plaintiff has failed to show that Counts Two and Three "possess enough heft" to "nudge [the] claims across the line from conceivable to plausible."  *Twombly*, 550 at 570, 557.  A complaint filed with "'naked assertion[s]' devoid of 'further factual enhancement'" is not plausible.  *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly, 550 U.S. at 555, 557*).  Plaintiff's allegations in Counts Two and Three are assertions unsupported by the facts.  For example, Plaintiff participated in the pre-termination hearing and, based upon Plaintiff's own statements, he could perform the duties essential to a job held by a temporary employee, but not the duties of the job Plaintiff occupied before his accident in June

(1:10CV02292)

2009.  Accordingly, Counts Two and Three are dismissed for failure to state a claim.

> **2.      Wrongful Termination Claim pursuant to §§ 1981 and 2000d and Title VII Retaliation Claim pursuant to § 1981**

ODDD Defendants argue that Plaintiff erroneously alleges causes of action under 42 U.S.C. §§ 1981 and 2000d because the statutory provisions are limited to race discrimination, and Plaintiff's Second Amended Complaint, in its entirety, does not allege or suggest violations pursuant to race.  ECF No. 39 at 7.

Section 1981 prohibits intentional *race* discrimination in the making and enforcing of contracts with both public and private actors.  *See Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-68 (6th Cir. 2001) (citing 42 U.S.C. § 1981) (emphasis added).  The statute's protection extends to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Additionally, 42 U.S.C. § 2000d states:  "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

A plaintiff must plead "sufficient factual matter" to render the legal claim plausible.  *Iqbal*, --- U.S. ----, 129 S.Ct. at 1949-50.  Plaintiff's causes of action do not include allegations regarding race, color, or national origin.  *Pro se* litigants are not entitled to a more lenient application of substantive law.  *Wolfel v. United States*, 711 F.2d 66, 67 (6th Cir. 1983).  Plaintiff's claim pursuant to 42 U.S.C. §§ 1981 (alleged in Counts Three and Five) and 2000d

(1:10CV02292)

(alleged in Count Three) are dismissed for failure to state a claim.

### b.  Fair Representation Labor Management Relations Act

In Count Four, Plaintiff alleges a violation of the Fair Representation Labor Management Relations Act Section 301(a) against ODDD and OCSEA in their individual and official capacities.  ECF No. 28 at 25-26.

Pursuant to the Labor Relations Management Act § 301, a claimant can bring "[s]uit[ ] for violation of contracts between an employer and a labor organization representing employees" or "between . . . labor organizations" in federal district court.  *Gilreath v. Clemens & Co.*, Case Nos. 05-4177, 05-4178, 06-3100, 2007 WL 43264, *5 (6th Cir. 2007) (quoting 29 U.S.C. § 185(a) (2000)).  "Hybrid" suits arise when a plaintiff jointly sues both his employer and his union under § 301.  *Id*. (citing *Hines v. Anchor Motor Freight, Inc*., 424 U.S. 554, 562, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Winston v. Gen. Drivers, Warehousemen & Helpers, Local Union No. 89*, 93 F.3d 251, 254 (6th Cir.1996)).  To succeed in a hybrid § 301 suit, the plaintiff must prove both:  that (1) his union breached its duty of fair representation and (2) his employer breached the collective bargaining agreement.  *Id*. (citing *Hines,* 424 U.S. at 570-71, 96 S.Ct. 1048); *see also Garrison v. Cassens Transp. Co.* ,334 F.3d 528, 542 (6th Cir. 2003).  If unsuccessful, the plaintiff's hybrid § 301 claim must fail.  *Id*.

### 1.  Collective Bargaining Agreement

Plaintiff does not allege that ODDD, his employer, breached the collective bargaining agreement.  Plaintiff alleges that ODDD conspired with OCSEA to violate Plaintiff's civil right "by making decisions that were not in the best interest of Plaintiff . . . ."  ECF No. 28 at 25.

(1:10CV02292)

Viewing the allegations against ODDD extremely liberally, Plaintiff has failed to establish an

entitlement to relief and, thereby, fails to justify the continuation of this litigation.  *Twombly*, 550

U.S. at 557.

### 2.    Duty of Fair Representation

The Sixth Circuit has held that a union breaches its duty "only when [its] conduct toward

a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." *Gilreath*,

*2007 WL 43264, at \*6* (citing *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir.1983)).  The Sixth

Circuit has found conduct arbitrary where a union "handles a grievance in a perfunctory manner,

with caprice or without rational explanation." *Id*. (internal quotations omitted).

In Count Four, Plaintiff claims that OCSEA breached its duty of the Fair Representation

Labor Management Relations Act § 301(a) by "making decisions that were not in the best

interest of Plaintiff [and] arbitrary or capricious in nature[;]" entering into an agreement to place

Plaintiff in a transitional work program; and refusing to represent Plaintiff at a post-termination

hearing.  ECF No. 28 at 25.

Plaintiff may not simply incant labels describing OCSEA's "decision" as "arbitrary or

capricious in nature."  ECF No. 28 at 25; *Iqbal*, 129 S. Ct. at 1950.  Plaintiff's allegations must

be enough to "raise a right to relief above the speculative level" and state a claim that is

"plausible on its face." *Id*. at 1965, 1974.  Count Four, viewed liberally, does not demonstrate a

facially plausible claim that OCSEA acted in a perfunctory manner without rational explanation.

Pursuant to Rule 12(b)(6), Count Four is, therefore, dismissed for failure to state a claim.

(1:10CV02292)

### c.    Title VII Retaliation Claim[12]

In Count Five, Plaintiff alleges a violation under Title VII of the Civil Rights Act of 1964 against Defendant Randy Russell in his individual and official capacities.  ECF No. 28 at 27-29. Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).

### 1.    Title VII Individual Capacity

It is well-established in the Sixth Circuit that an individual employee or supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII.[13]  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000); *Little v. BP Exploration & Oil Co*., 265 F.3d 357, 362 (6th Cir. 2001) ("The law in this Circuit is clear that a supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII."); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997) ("We now hold that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII.").  According to Title VII, "employer" is defined to mean "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person."  42 U.S.C. § 2000e(b).

---

[12]  In light of the Court's previous finding that Plaintiff did not allege a Retaliation claim pursuant to § 1981, the Court will only address Plaintiff's claim under Title VII.

[13]  According to the Sixth Circuit, "the statute as a whole, the legislative history and the case law support the conclusion that Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII."  *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 406 (6th Cir. 1997).

27

(1:10CV02292)

Here, Russell was merely Plaintiff's supervisor in a management role and not his employer, and, thus, Russell cannot be held individually liable under Title VII. *See BP Exploration & Oil Co., 265 F.3d at 362* ("Since Bruzina was merely Plaintiff's supervisor and not his employer, Bruzina cannot be held individually liable under Title VII."); *see also Banks-Bey v. Acxiom*, Case No. 1:09 CV 1249, 2010 WL 395221, *4 (N.D. Ohio Jan. 27, 2010) (Gaughan, J.) (individual defendants who were part of corporation's management staff are not considered "employers" under Title VII). Furthermore, Plaintiff has not pleaded facts suggesting that Russell is an independent employer. Absent any allegation that Russell, a supervisor employed by the ODDD, otherwise qualifies as an employer, he cannot be individually liable under Title VII.

### 2. Title VII Official Capacity

The Sixth Circuit has never ruled on Title VII suits against a supervisor in his official capacity, but has recognized the possibility that a supervisor may be sued in his official capacity under Title VII if the "[supervisor] had *significant* control over Plaintiff's hiring, firing and working conditions such that he could be considered the "alter ego" of [employer]." *BP Exploration & Oil Co., 265 F.3d at 362 n.2* (emphasis added).

Plaintiff's Second Amended Complaint, viewed liberally, fails to allege sufficient facts to demonstrate significant control over Plaintiff's hiring, firing and working conditions. In summary, Plaintiff alleges that Russell conspired to deny Plaintiff's worker's compensation claim (ECF No. 28 at 11); Russell was forced to resign for falsification and misappropriation of funds (ECF No. 28 at 12); Russell removed the fire extinguisher tags (ECF No. 28 at 13); and

28

(1:10CV02292)

Russell's actions caused Plaintiff to suffer emotional distress (ECF No. 28 at 13).

Accordingly, the claim against Russell for violations of Title VII in his official capacity is dismissed.

### 5. Exhaustion of Administrative Remedies: EEOC Charge and Right to Sue Letter Requirements

ODDD Defendants argue that Plaintiff failed to exhaust his requisite administrative remedies by not including a Title VII retaliation claim in his EEOC charge. ECF No. 39 at 7-9. OCSEA Defendants argue that Plaintiff's entire case is defective because Plaintiff has not provided a right-to-sue letter. ECF No. 46 at 8.

### a. Plaintiff Adequately Satisfied his EEOC Charge Requirement

An employee alleging employment discrimination in violation of the statute must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act or acts. *Scott v. Eastman Chem. Co.*, Case No. 05-6079, 2008 WL 1808549, *3 (6th Cir. April 22, 2009) (citing 42 U.S.C. § 2000e-5(e)(1)). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge. *Scott*, 2008 WL 1808549, at *6 (citing 42 U.S.C. § 2000e-5(f)(1)); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

In the instant matter, ODDD Defendants rely on the Sixth Circuit's opinion in *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359 (6th Cir.2010). In *Younis*, the Court affirmed the district court's finding that the plaintiff failed to exhaust his administrative remedies on his Title VII

29

(1:10CV02292)

retaliation claim. *Younis*, 610 F.3d. at 362-63. The *Younis* case, however, is distinguishable

from the case at bar because in that case, there was "nothing in the narrative portion of the EEOC

charge that could be interpreted as claiming retaliation, nor [wa]s there any language that would

have put the EEOC or the employer on notice that [the plaintiff] was alleging retaliation."

*Younis*, 610 F.3d at 363. In this case, the narrative of Plaintiff's EEOC charge clearly and

explicitly sets forth his retaliation claim and provides the EEOC and employer with notice of

Plaintiff's retaliation claim by checking the "retaliation" box. ECF No. 28-1 at 67; *Sullivan v.*

*Coca-Cola Bottling Co. of Ohio/Kentucky*, Case No. 05-3364, 2006 WL 1407889, *7 (6th Cir.

May 18, 2006) ("Sullivan complied with this requirement by filing a charge with the EEOC in

December 1999, in which she checked the 'retaliation' box and alleged that she had been given

poor performance evaluations and was denied pay increases in retaliation for her complaints of

discrimination."). Contrary to ODDD Defendants' position, the Court finds that Plaintiff

sufficiently satisfied his EEOC charge requirement.

        **b.**    **Plaintiff's Right to Sue Letter Requirement is Waived**

        Title VII requires a plaintiff alleging employment discrimination to file a timely charge of

discrimination with the EEOC before bringing suit in federal court. *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). When a charge of

discrimination is filed, the EEOC must investigate the complaint in order to determine whether

there is "reasonable cause to believe that the charge is true." 42 U.S.C. § 2000e-5(b). If the

EEOC determines that the complaint has a reasonable basis, it will issue a right-to-sue letter to

(1:10CV02292)

the plaintiff.[14]  29 C.F.R. § 1601.28(b).  A person must possess a right-to-sue letter from the

EEOC in order to file suit under Title VII.  *E.E.O.C. v. Frank's Nursery & Crafts, Inc.*, 177 F.3d

448, 456 (6th Cir.1999); *see also* *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th

Cir. 2000) (plaintiff alleging violation of the Americans with Disabilities Act may not file suit

unless she has a right-to-sue letter from the EEOC).

"[T]he requirement of obtaining a right-to-sue letter may be waived by the parties or the

court[]" because "the right "the right-to-sue letter is a condition precedent" to filing suit.  *Parry*,

236 F.3d at 309; *see also* *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1031-32 (6th

Cir.1998).  Here, the record is completely void of a right-to-sue letter.  In light of the Court's

Rule 12(c) findings, above, and the mature procedural posture of the case, the Court waives the

requirement of obtaining a right-to-sue letter.

### B. Subject Matter Jurisdiction over Plaintiff's Fair Representation Labor Management Relations Act Section 301(a)

When challenged by a motion filed under Rule 12(b)(1), the plaintiff bears the burden of

establishing subject matter jurisdiction.  *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir.

2005).  A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may take

the form of a facial challenge, which tests the sufficiency of the pleading, or a factual challenge,

which contests the factual predicate for jurisdiction.  *O'Bryan v. Holy See*, 556 F.3d 361, 375

(6th Cir. 2009).  In a facial attack, the court accepts as true all the allegations in the complaint,

similar to the standard for a Rule 12(b)(6) motion.  *Ohio Nat'l Life Ins. Co. v. United States*, 922

---

[14]  If the EEOC does not issue a right-to-sue letter within 180 days after the charge of
discrimination is filed, the plaintiff may request such a letter. 29 C.F.R. § 1601.28(a).

31

(1:10CV02292)

F.2d 320, 325 (6th Cir. 1990).  In a factual attack, the allegations in the complaint are not

afforded a presumption of truthfulness and the district court weighs competing evidence to

determine whether subject matter jurisdiction exists.  *Id*.  In this case, ODDD Defendants have

made a facial challenge to Plaintiff's Second Amended Complaint.

Specifically, OCSEA Defendants argue that the State Employment Relations Board

("SERB") has exclusive jurisdiction over Plaintiff's Fair Representation Labor Management

Relations claim, pursuant to R.C. § 4117.  ECF No. 46 at 4-8.

The Sixth Circuit recently stated that the SERB maintains exclusive, "primary"

jurisdiction for unfair labor practice disputes; and, thereafter, an appellant "may only seek relief

from the courts *after* he or she has exhausted the administrative remedy provided through

SERB."  *See Zifirau v. Cleveland Municipal School Dist*., Case No. 09-4492, 2011 WL 3715083,

*6 (6th Cir. Aug. 24, 2011) (citing *Shamrock v. Trumbull Cnty. Comm'rs*, 71 Ohio App.3d 54,

593 N.E.2d 28, 30-31 (1990)) (emphasis added).  The Ohio Revised Code § 4117 controls

"[w]hen a public employee and an employer have entered into a collective bargaining agreement

and a dispute arises . . . ."[15]  *Zifirau*, 2011 WL 3715083, *6 (citing *State ex rel. Ramsdell v.

Washington Local Sch. Bd*., 52 Ohio App.3d 4, 556 N.E.2d 197, 200 (1988)).  Acts that

"constitute unfair labor practices under § 4117 are subject to the exclusive jurisdiction of the

State Employment Relations Board ("SERB"), the courts cannot review such claims on primary

---

[15]  Chapter 4117 "provides that if a collective bargaining agreement provides for a final
and binding arbitration of grievances, public employers, employees, and employee organizations
are subject solely to that grievance procedure."  *Zifirau*, 2011 WL 3715083, at *6 (citing *Blair v.
Milford Exempted Vill. Sch. Dist. Bd. of Educ*., 62 Ohio App.3d 424, 575 N.E.2d 1190, 1197
(1989)).

(1:10CV02292)

jurisdiction."[16] *Zifirau*, 2011 WL 3715083, *6 (citing *Shamrock*, 71 593 N.E.2d at 30-31).  In

turn, "[a]n appellant may only seek relief from the courts *after* he or she has exhausted the

administrative remedy provided through SERB."  *Id*. (citing *Shamrock*, 593 N.E.2d at 31).

Here, it is undisputed that Plaintiff exhausted his administrative remedy through the

SERB.  The record reflects that Plaintiff filed an unfair practice labor charge with the SERB.

ECF No. 28-1 at 25-33.  The SERB dismissed Plaintiff's charge for lack of probable cause.  ECF

No. 28-1 at 40.  OCSEA's lack of subject matter jurisdiction claim pertaining to Count Four is,

therefore, without merit.[17]

### III.  Conclusion

For the reasons stated above, the Court grants ODDD Defendants, ODAS Defendants,

and OCSEA Defendants' motions in part (ECF Nos. 39; 46).  *See* Appendix A.

Plaintiff's Amended Motion for Summary Judgment and motions to amend his Complaint

are denied as moot (ECF Nos. 71; 73; and 84).  ODDD Defendants and ODAS Defendants'

Motion to Strike Plaintiff's Exhibits and Motion for Leave to File Sur-Reply is denied (ECF No.

---

[16]  SERB, not the courts, resolve unfair labor practice charges in two general areas:  "(1) where one of the parties filed charges with SERB alleging an unfair labor practice under R.C. § 4117.11 and (2) where a complaint brought before the common pleas court alleges conduct that constitutes an unfair labor practice specifically enumerated in R.C. § 4117.11."  *Zifirau*, 2011 WL 3715083, at *6 (citing *State ex rel. Ohio Dep't of Mental Health v. Nadel*, 98 Ohio St.3d 405, 786 N.E.2d 49, 54 (2003)).

[17]  OCSEA Defendants argue, in the alternative, that the Court lacks subject matter jurisdiction over Plaintiff's ADA claim.  ECF No. 46 at 10-11.  The Sixth Circuit has recognized that cases of disability discrimination are within the subject matter jurisdiction of the federal courts.  *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876 (6th Cir. 1996).  OCSEA Defendants alternative argument, therefore, lacks merit.

(1:10CV02292)

<u>78</u>).[18]

    IT IS SO ORDERED.


July 18, 2012                                       _/s/ Benita Y. Pearson_____
Date                                               Benita Y. Pearson
                                                   United States District Judge

---

    [18]  In ruling on a Rule 12(c) motion, the Court may consider exhibits attached to the complaint and matters of public record.  *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).  Here, *Pro Se* Plaintiff attached the exhibits at issue to his Second Amended Complaint, ECF No. 28, and also his Amended Motion for Summary Judgment, ECF No. 71, while most of the exhibits appear to be a matter of public record, all may not be.  In their motion to strike the exhibits, the moving Defendants point to no prejudice resulting from the exhibits but argue, as the Court is well aware, that documents used to support or oppose a summary judgment motion must be authenticated or, otherwise, disregarded by the court in resolving the pending motion. ECF No. 78; *see Alexander v. CareSource*, 576 F.3d 551, 558-59 (6th Cir. 2008).  In the instant matter, the Court did not reach the merits of Plaintiff's Motion for Summary Judgment, but rather denied the motion as moot, given the prevailing status of Defendants collective motions. Thus, ODDD Defendants and ODAS Defendants' argument regarding authenticity is irrelevant. More importantly, because Defendants point out no prejudice and the Court finds that the exhibits add clarity to Plaintiff's *pro se* filings, ODDD Defendants and ODAS Defendants' Motion to Strike Plaintiff's Exhibits is denied.  In an earlier ruling, the Court granted the portion of the motion seeking permission to file a sur-reply.  *See* ECF No. 82.

(1:10CV02292)

(1:10CV02292)

**APPENDIX A**

| Cause of Action | Individual Capacity | Official Capacity |
|---|---|---|
| **Count One**: Deprivation of Right to Procedural Due Process 42 U.S.C. § 1983. ECF No. 28 at 18-20. | ODDD, Randy Russell, ODAS, Susan Bythwood-Russell, and Bonnie Cross are entitled to qualified immunity. ECF No. 39 at 4-7. | ODDD, Randy Russell, ODAS, and OCSEA are entitled to Eleventh Amendment immunity. ECF No. 39 at 4. |
| | Gregory Patterson is entitled to absolute immunity. ECF No. 39 at 9-11. | Gregory Patterson is entitled to absolute immunity. ECF No. 39 at 9-11. |
| **Count Two**: ADA Section 504 of the Rehabilitation Act of 1973 as amended Title 42 12112. ECF No. 28 at 21-22. | Dismissed pursuant to Fed. R. Civ. P. 12(b)(6) against ODDD and OCSEA.  ECF Nos. 39 11-12; 46 at 10-11. | ODDD and OCSEA are entitled to Eleventh Amendment immunity. ECF No. 39 at 4. |
| **Count Three**: Wrongful Termination 28 U.S.C. §§ 1331 and 1343, the Fourteenth Amendment and 42 U.S.C. §§ 1981, 1983, and 2000d. ECF No. 28 at 23-24. | ODDD is entitled to qualified immunity. ECF No. 39 at 6-7. | ODDD and OCSEA are entitled to Eleventh Amendment immunity. ECF No. 39 at 4. |
| | Dismissed pursuant to Fed. R. Civ. P. 12(b)(6) against OCSEA. ECF No. 46 at 11. | |
| **Count Four**: Breach of Duty of Fair Representation Labor Management and Relations Act Section 301(a) 29 U.S.C. § 185(a). ECF No. 28 at 25-26. | Dismissed pursuant to Fed. R. Civ. P. 12(b)(6) against ODDD and OCSEA.  ECF Nos. 39 11-12; 46 at 12-14. | Dismissed pursuant to Fed. R. Civ. P. 12(b)(6) against ODDD and OCSEA.  ECF Nos. 39 11-12; 46 at 12-14. |
| **Count Five**: Retaliation Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 ECF No. 28 at 27-29. | Dismissed pursuant to Fed. R. Civ. P. 12(b)(6) against Randy Russell. ECF No. 39 at 8-9. | Dismissed pursuant to Fed. R. Civ. P. 12(b)(6) against Randy Russell. ECF No. 39 at 8-9. |